Brett R. Cohen (SBN 337543)
bcohen@leedsbrownlaw.com
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA NACARINO, individually and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>    - against -<br><br>CURTIS INTERNATIONAL LTD.,<br><br>                      Defendant. | **Case No.: 3:26-cv-1736**<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Elena Nacarino (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE CASE

1.  This class action seeks damages and equitable relief arising from Curtis International Ltd.'s ("Curtis" or "Defendant") false and misleading representations regarding the safety of its "Frigidaire"-branded minifridges, including model numbers EFMIS129, EFMIS137, EFMIS149, EFMIS175 and EFMIS121 (collectively, "Products").

2.  Upon information and belief, Curtis manufactures, markets, and/or distributes home appliances such as compact fridges, freezers, microwaves and water coolers under the Frigidaire brand name.[1]

3.  Accordingly, Defendant is responsible for the design, manufacture, marketing, and sale of the Products at issue.

---

[1] https://curtisint.com/frigidaire/ (last accessed Feb. 27, 2026)

4.      On its website, Curtis presents itself as a reliable and trustworthy business to consumers, stating "is continuously refining and innovating products to ensure it continues to be a premier provider of home electronics and appliances that meet and exceeds the consumer demands in this constantly changing market."[2]

5.      Product manuals were included with the sale of units of the Products and provided safety instructions "pertaining to risk of fire, electric shock or injury to persons,"[3] leading consumers to believe that if they followed the instructions, the Products were suitable for everyday use.

6.      Defendant represented that the Products were safe and reliable, despite being aware that design and manufacturing defects rendered them hazardous.

7.      As a direct result of these misrepresentations, Plaintiff and Class Members purchased defective Products that failed to perform as advertised and posed a substantial risk of serious injury.

8.      Indeed, the Products contain an identical dangerous defect. Specifically, the Products' internal electrical components can short circuit and ignite the surrounding plastic housing, posing fire and burn hazards (the "Defect").[4]

9.      Defendant has been aware of the Defect, which is dangerous, having received over two dozen reports of issues pertaining to the Defect from consumers about the Products.[5]

10.     On July 24, 2025, the U.S. Consumer Product Safety Commission ("CSPC") announced a recall of approximately 634,000 units of the Products, including model numbers EFMIS129, EFMIS137, EFMIS149 and EFMIS175 with specified serial numbers that were sold at "Walmart and other stores nationwide and online at Walmart.com and Amazon.com from

---

[2] https://curtisint.com/frigidaire/about-us/ (last accessed Feb. 27, 2026)
[3] *See, e.g.,*
https://legacy.curtisint.com/html/CustService/Manuals/User%20Manual%20EFMIS175%20ENFR%20180%20Day.pdf (last accessed Feb. 27, 2026)
[4] *See* https://www.cpsc.gov/Recalls/2025/Curtis-International-Recalls-Frigidaire-brand-Minifridges-Due-to-Fire-and-Burn-Hazards-More-Than-700-000-Reported-in-Property-Damage (last accessed Feb. 27, 2026) and
https://www.cpsc.gov/Recalls/2026/Curtis-International-Expands-Recall-of-Frigidaire-brand-Minifridges-Due-to-Fire-and-Burn-Hazards (last accessed Feb. 27, 2026)
[5] *See id.*

January 2020 through December 2023 for between $36 and $40"; the CSPS announced an expansion of the recall to include an additional 330,000 units under model number EFMIS121 with specified serial numbers that were sold "[e]xclusively at Target stores nationwide and online at Target.com from January 2020 through October 2023 for around $30." (the "Recall").[6]

11.     In connection with the Recall, consumers have been instructed to "immediately stop using" the Products.

12.     Consumers who purchased the Products learned through the Recall notice that the Products posed a serious safety hazard requiring significant corrective action.

13.     Currently Defendant is offering only a refund.[7]

14.     This remedy and refund is inadequate and fails to address any property damages or other damages due to the actual fires caused by the Products, despite such being noted in the recall itself.[8] The remedy and refund also requires users to verify the model numbers.[9] Such verification is impossible if the recalled and defective minifridge has caught fire, as is the reason for such a recall. In all, Defendant's refunds and proposed remedy are ineffective and inadequate.

15.     Based upon the foregoing, and by selling dangerously defective the Products, Defendant has violated the Uniform Commercial Code's ("UCC") warranty provisions, violated California consumer protection statutes, has been negligent, and has been unjustly enriched.

16.     As a result of the foregoing, Plaintiff and the Class Members have suffered damages.

## JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] https://www.recallrtr.com/minifridge (last accessed Feb. 27, 2026)

1  of the proposed Class who are diverse from Defendant (including Plaintiff), and (4) there are more

2  than 100 proposed Class members.

3      18.    This Court has personal jurisdiction over Defendant because Defendant has

4  purposefully availed itself to the law, rights, and benefits of the State of California.

5      19.    Venue is proper in this District because many Class Members, including Plaintiff,

6  reside in the Northern District of California, and throughout the State of California. Moreover, a

7  substantial part of the events or omissions giving rise to the Classes' claims occurred in this district,

8  and as such venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2).

9  **PARTIES**

10     20.    Plaintiff is a resident and citizen of San Francisco County, California.

11     21.    Defendant Curtis International Ltd. is a foreign business entity with a headquarters

12 and principal place of business located at 7045 Beckett Drive, Unit 15, Mississauga, Ontario L5S

13 2A3, Canada.[10]

14 **FACTUAL ALLEGATIONS**

15     22.    In or around Fall 2023, Plaintiff purchased one of the affected Products, model

16 number EFMIS121-RED at the Target retail establishment located at 220 Bridgepointe Parkway,

17 San Mateo, California 94404.

18     23.    At all times relevant to the issues alleged in this Complaint, Defendant was engaged

19 in the business of designing, manufacturing, importing, marketing, labeling, distributing, selling,

20 and/or introducing into interstate commerce the "Frigidaire" branded minifridge, including the

21 Products.

22     24.    The Products were marketed as minifridges intended to hold up to six or nine

23 (dependent upon the model) beverages and safe to use.

24     25.    Defendant authored and/or approved the information that appears in the product

25 manual for the Products and on the labels and packaging of the Products.

26

27

28

---

[10] https://www.curtisint.com/contact-us/ (last accessed Feb. 27, 2026)

26.     The Products were available for purchase at retailers like Walmart and Target, and online, generally from 2020 through 2023, and typically sold for between $30 and $40.

27.     At all relevant times, Defendant has marketed its Products in a consistent and uniform manner.

28.     Based upon the foregoing, Plaintiff considered Curtis a reputable brand with a strong reputation for producing safe, reliable products and that this minifridge would be no different.

29.     Until this Recall, Plaintiff has never been informed of any recalls, defects, or potential hazards related to her purchase.

30.     Defendant has sold the Products as minifridges, and implied that they were suitable for that purpose. However, Defendant failed to disclose that the Products had defective internal electrical components that can short circuit and ignite the surrounding plastic housing, posing fire and burn hazards. The risk associated with the Products was beyond any reasonable or nominal risk that might be associated with minifridges generally.

31.     Defendant made partial representations to Plaintiff and Class Members, while suppressing the Defect. Specifically, by displaying the Products and describing their functions and parts, Defendant implied that the Products were suitable and reasonably safe to use as minifridges, without disclosing that they had a critical safety-related defect.

32.     Plaintiff and Class Members would not have bought the Products, or would not have bought them on the same terms, if the Defect had been disclosed. The materiality of the Defect also is demonstrated by the existence of the Recall.

33.     On both July 24, 2025 and on January 15, 2026, Plaintiff and other consumers of Defendant's Products were notified by CPSC of the Recall and the affected Products.[11]

34.     As a part of the Recall, CSPC urged consumers of the affected Products to stop using the Products immediately.

---

[11] *See* supra fn. 4.

35.    Consumers who purchased the Products learned through the Recall notice that the Products posed a serious and undisclosed safety hazard.

36.    Because the Products failed to perform as advertised and fell far short of the reasonable expectations of consumers, Plaintiff and Class Members suffered damages.

37.    Consumers, including Plaintiff, reasonably relied on Defendant's representations that the Products were safe and able to be used for their intended purpose, and that they included basic safety features that an ordinary consumer would expect to accompany any consumer minifridge. Defendant misrepresented, concealed, and otherwise omitted material facts that would have been important to Plaintiff and Class Members in deciding whether to purchase the Products. Defendant intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members. Accordingly, Plaintiff and Class Members: (a) reasonably relied upon Defendant's misrepresentations and concealment of these material facts and (b) suffered monetary injury as a proximate result of that justifiable reliance.

38.    Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Indeed, the Defect (a) can cause serious injury and (b), as conceded by Defendant, renders the Products unsuitable for one of their primary features: keeping beverages cold.

39.    Plaintiff and Class Members paid money for the Products, but Plaintiff and Class Members did not obtain the full value of the advertised/warranted Products due to Defendant's misrepresentations and omissions. Had Plaintiff and Class Members known the truth about the Products, i.e., that they had a serious safety defect, Plaintiff and Class Members would not have purchased them at the price at which they bought the Products. Consequently, Plaintiff and Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

40.    At all relevant times, Defendant, while concealing the Defect, actively and intentionally misrepresented the qualities and characteristics of the Products. Accordingly, Plaintiff's and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

41. Defendant misrepresented the Products and concealed the Defect to: (a) sell more units of Products, (b) avoid the costs of a recall, and (c) delay Plaintiff and Class Members from suing.

42. Due to Defendant's intentional misrepresentations and active concealment of and/or failure to inform Plaintiff and Class Members of the Defect, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, Defendant's intentional misrepresentations and active concealment stop them from relying on any statutes of limitations.

43. Moreover, Plaintiff and Class Members did not discover that the Products had a Defect, until Defendant recalled the Products. Plaintiff and Class Members had no realistic ability to uncover the Products' Defect given that it involved a defect in workmanship, parts or materials in the Products. Defendant's active concealment of the true nature of the Products hampered Plaintiff's and Class Members' ability to discover their causes of action.

44. The Recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

45. Indeed, the Recall has only been briefly publicized and in a very limited manner. Therefore, on information and belief, many eligible class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of Recall was not comparable to the typical notice provided in a class action.

**CLASS ACTION ALLEGATIONS**

46. Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

47. The proposed Class is defined as follows:

**Nationwide Class:** All persons within the United States who purchased affected units of Defendant's Products.

**California Subclass:** All persons within the State of California who purchased who purchased affected units of Defendant's Products.

48.    Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Classes based upon discovery and further investigation.

49.    *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. CSPC reports indicate that the number of Defendant's units subject to the Recall is approximately 964,000, and though the number of individuals who qualify as class members is likely to approach this figure, the exact number is unknown to Plaintiffs. For example, some Class Members may have purchased more than one of Defendant's Products. Nevertheless, the precise number of class members can be readily identified through Defendant's records.

50.    *Commonality*: Questions of law or fact common to the Class include, without limitation:

        a.    Whether the Products in question were defective;

        b.    Whether the defective nature of the Products would be considered material;

        c.    Whether the defective nature of the Products constitute an unreasonable safety risk;

        d.    Whether Defendant knew or should have known about the defective nature of the Products;

        e.    Whether Defendant had a duty to disclose, prior to purchase, the defective nature of the Products to consumers;

        f.    Whether the defective nature of the products has decreased the value of the Products;

        g.    Whether Defendant's conduct constitutes an unlawful breach of the implied warranty of merchantability;

        h.    Whether Defendant's conduct constitutes an unlawful breach of express warranties;

        i.    Whether Defendant fraudulently omitted material information in its interactions with consumers;

        j.    Whether Defendant was unjustly enriched; and

k. Whether Plaintiff and Class Members are entitled to damages and/or other monetary relief.

51. *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class Members were injured and suffered damages in substantially the same manner as Plaintiff, Class Members have the same claims against Defendant relating to the same course of conduct, and Class Members are entitled to relief under the same legal theories asserted by Plaintiff.

52. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

53. *Predominance*: Questions of law or fact common to proposed Class Members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

54. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

55. *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

CLASS ACTION COMPLAINT

56.     The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

57.     The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

58.     Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

**CAUSES OF ACTION**
**COUNT I**
**Breach of Express Warranty**
**(On behalf of the Nationwide Class, or alternatively,**
**the California Subclasses)**

59.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

60.     Plaintiff and Class Members have privity of contract with Defendant through their purchase of the Products from an authorized retailer that accompanied the purchase and expressly applies to purchasers of the Products.

61.     Defendant manufactured and/or marketed the Products.

62.     Plaintiff and Class Members either: (a) purchased the Products by and through Defendant's authorized sellers for retail sale to consumers or (b) were otherwise expected to be the third-party beneficiaries of Defendant's contracts with authorized sellers, or eventual purchasers, when bought from a third party.

63.     Defendant knew or had reason to know of the specific use for which Plaintiff and the Class Members purchased the Products.

64.     The express warranty was a material part of the bargain between Defendant and consumers. At the time it made this express warranty, Defendant: (a) knew of the purpose for which consumers, including Plaintiff and Class Members, would use the products and (b) designed

1    and intended them to be used for that specific purpose.

2    65.    Defendant breached its express warranty by selling a minifridge that was neither:

3    (a) free of defects, (b) made for years of safe and dependable operation, (c) made from

4    merchantable material and workmanship, nor (d) capable of being used for the ordinary purpose,

5    suitable and reasonably safe to use as a minifridge.

6    66.    Defendant also breached its express warranty by selling Products that were

7    defective when made and, thus, contained the Defect on the very first day of purchase, creating a

8    serious safety risk to Plaintiff and Class Members.

9    67.    The Products that Plaintiff and each Class Member purchased were subject to the

10   Defect and caused each of them injury because they would not have purchased the Products had

11   they known of the Defect.

12   68.    Additionally, the UCC specifically provides that the damages associated with

13   breach of warranty are the difference between the product as warranted and the product delivered.

14   69.    Upon information and belief, Defendant received notice and have known of the

15   Defect through customer warranty claims, consumers reporting problems with the Products,

16   customer complaints, and its own internal and external testing.

17   70.    But Defendant failed to provide an adequate remedy.

18   71.    As a result of Defendant's breach of its express warranty, Plaintiff and Class

19   Members have suffered damages.

20   72.    Accordingly, Plaintiff and the Class seek damages resulting from the Defect.

21                                **<u>COUNT II</u>**
                     **Breach of Implied Warranty of Merchantability**
22     **Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790 Et. Seq.)**
23                **(on behalf of Plaintiff and the California subclass)**

24   73.    Plaintiff repeats and re-alleges the allegations above as if set forth herein.

25   74.    Defendant defectively manufactured the Products purchased by Plaintiff and Class

26   Members, and those Products posed a serious and immediate safety risk to consumers, including

27   Plaintiff and Class Members, and the general public.

28

75.     Plaintiff and Class Members purchased the product new, primarily for personal or household purposes. They did not use the Products for business purposes.

76.     All the Products sold by Defendant left Defendant's facilities and control with the Defect in the manufacture of the Products.

77.     The Defect places Plaintiff and Class Members at serious safety and property damage risk upon using the Products in their homes. Defendant admits that one cannot safely use the Products, as sold, as minifridges.

78.     The law requires manufacturers or sellers of a product to ensure that the Products: (a) are merchantable and reasonably fit for the ordinary purposes for which ordinary consumers use them and (b) are acceptable in trade for the product description.

79.     Pursuant to Cal. Civ. Cod. § 1782, this implied warranty of merchantability is part of the basis of the bargain between Defendant and purchasers, including Plaintiff and the Class Members.

80.     Defendant breached the implied warranty of merchantability because the Products: (a) are defective and pose a serious safety risk, (b) were not fit for the ordinary purposes for which they were used, (c) would not pass without objection, and (d) failed to conform to the standard performance of like products.

81.     The Defect is substantially certain to manifest during the reasonable expected life of any one of the Products that do not have the replacement capacitor.

82.     Defendant knew, or should have known, that the Products posed a safety risk and were defective, and Defendant breached the implied warranties at the time they sold the Products to Plaintiff and Class Members or otherwise placed them into the stream of commerce.

83.     Target is an authorized dealer of Defendant's products, including the Products at issue here.

84.     As an authorized dealer with a partnership in North America, Defendant would have impliedly warranted to Target that its products would pass without objection in trade under the contract description; were fit for the ordinary purpose for which the products would be used; and conformed to the promises or affirmations of fact made on the container or label.

85.    Plaintiff and Class Members were third-party beneficiaries of that implied warranty because they were the intended and foreseeable end-users of the products.

86.    Plaintiff and Class Members relied on written materials of Defendant.

87.    As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class Members bought the Products without knowledge of the Defect or the serious safety risk.

88.    As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class Members purchased unsafe and defective Products that were not fit for their intended purpose of being reasonably safe to use as minifridges, without disclosing that they had a critical safety-related defect.

89.    Defendant received notice of the Defect, and their breaches of express and implied warranties, through: (a) customer warranty claims that reported problems with the Products, (b) customer complaints, and (c) their own testing.

90.    Despite having notice and knowledge of the Defect, Defendant failed to provide: (a) a defect-free Product to Plaintiff and Class Members, (b) adequate replacement of the defective Products, and (c) any form of compensation for the economic damages that resulted from the Defect.

91.    Any attempt by Defendant to disclaim the implied warranty was improper, insufficient, and of no effect.

92.    As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class Members have suffered damages.

**<u>COUNT III</u>**
**Violations of California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(on behalf of Plaintiff and the California subclass)**

93.    Plaintiff repeats and re-allege the allegations above as if set forth herein.

94.    Defendant committed acts of unfair competition, as described above, in violation the Unfair Competition Law ("UCL").

95.    Defendant's conduct constitutes "unlawful" business practice within the meaning of the UCL. It includes, without limitation, violations of the Song-Berverly Consumer Warranty Act, Cal Civ. Code § 1790 et seq., and negligent or fraudulent misrepresentation.

96.    Defendant's conduct, as described above, also constitutes a "fraudulent" business practice violative of the UCL. As explained in the preceding paragraphs, Defendant's false statements about the Products fraudulently present the impression that the Products were adequately safe for use. This conduct was designed to deceive consumers as to the true quality and value of the Products consumers purchased.

97.    Defendant knew or should have known that its false representations and conduct constituted unlawful, unfair, and fraudulent business practices likely to deceive a reasonable consumer.

98.    Plaintiff and Class Members have suffered injuries, in fact, and have lost money as a result of each Defendant's UCL violations in that they were deceived into purchasing the Products, which were not adequately safe or easy to use for the purposes of Plaintiff and California Subclass Members.

99.    At a minimum, to the extent the Court ultimately deems the remedies at law that Plaintiff's requests inadequate, Plaintiff and California Subclass Members are entitled to equitable relief such as restitution and injunctive relief under Cal. Bus. and Pro. Code § 17203 enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices.

<u>**COUNT IV**</u>
**Negligence**
**(On behalf of Plaintiff and the Nationwide Class, or alternatively,**
**the California Subclasses)**

100.    Plaintiff repeats and re-allege the allegations above as if set forth herein.

101.    At all times relevant, Defendant had a duty to provide Plaintiff and the other members of the Class with safe Products.

102.    Defendant breached this duty by failing to ensure the safety of its Products.

103.     As a result of the Recall, Plaintiff and other Class Members were harmed in that they suffered economic injury and lost the benefit of the bargain relating to their purchase price of Defendant's Products.

104.     Defendant's breach of its duty caused Plaintiff and other Class Members damages both proximately and factually.

105.     Had Defendant properly designed and manufactured its minifridges, and properly examined and tested their Products prior to sale, Plaintiff and other Class Members would not have been injured and/or damaged as they would not have purchased unsafe products.

106.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been injured and sustained damages.

**<u>COUNT V</u>**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Nationwide Class, or alternatively,**
**the California Subclasses)**

107.     Plaintiff repeats and re-allege the allegations above as if set forth herein.

108.     Defendant represented to Plaintiff and Class members that its Products were reliable, merchantable, and in good repair.

109.     The Defect caused the Products to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

110.     Defendant knew or should have known that its Products could not conform to its representations because of the defect.

111.     Defendant mispresented, concealed, and omitted material information concerning the defect.

112.     The Defect and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase their Products.

113.    Defendant mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiff and Class Members to purchase its Products at a substantially higher price than what they would otherwise have paid.

114.    Plaintiff and Class Members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing their Products.

115.    Plaintiff and Class Members would not have purchased the Products if they knew of the Defect, or they would have only paid substantially less.

116.    Plaintiffs and Class Members conferred substantial benefits on Defendant by purchasing defective Products at a premium without receiving a product that conformed to Defendant's representations.

117.    Defendant knowingly and willingly accepted and enjoyed these benefits.

118.    Defendant's retention of these benefits would be inequitable because Defendant obtained benefits to the detriment of Plaintiff and Class Members when Plaintiff and Class Members did not obtain their promised benefits.

119.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members are entitled to restitution.

## DEMANDS FOR RELIEF

134.    Plaintiff demands a trial by jury on all issues.

**WHEREFORE,** Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered, against Defendant, by an order that does the following:

(a) certifies the proposed Class and subclasses;

(b) designates Plaintiff as the class representative, designates the undersigned as class counsel, and requires Defendant to bear the costs of class notice;

(c) enjoins Defendant from selling the Products until: either (a) they can be safely used as minifridges that meet industry standards or (b) full disclosure of the failure to meet industry standards appears on all packaging;

(d) requires Defendant to engage in: (a) a corrective advertising campaign and (b) any further necessary affirmative injunctive relief, such as recalling the

existing Products;

(e) awards: (i) declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein and (ii) injunctive relief to remedy Defendant's past conduct;

(f) requires Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be: (i) an unlawful, unfair, or fraudulent business act or practice; (ii) untrue or misleading advertising; or (iii) a violation of law, plus pre-judgment and post-judgement interest thereon;

(g) requires Defendant to disgorge or return all moneys, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

(h) requires Defendant to pay all actual and statutory damages, permitted under the counts alleged herein, in an amount to be determined by this Court, but at least $5,000,000;

(i) requires Defendant to pay punitive damages on any count so allowable;

(j) awards attorneys' fees and costs to Plaintiff and the Classes; and

(k) provides for all other just, proper relief.

Dated: February 27, 2026

**LEEDS BROWN LAW, P.C.**

*/s/ Brett R. Cohen*

Brett R. Cohen (SBN 337543)
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
bcohen@leedsbrownlaw.com

*Counsel for Plaintiff and the Putative Class*